IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WILLIAM N. LEDFORD,

                Plaintiff,

  v.

JUSTIN S. RIBAULT, DANIEL LAVOIE,
GINA BUONO, JAIME ADAMS,
and SHERYL KINYON,

                Defendants.

OPINION and ORDER

23-cv-407-jdp

---

      Plaintiff William N. Ledford, proceeding without counsel, is currently incarcerated at Columbia Correctional Institution. Ledford alleges that when he was incarcerated at Wisconsin Secure Program Facility, prison staff discontinued the opioid pain medication that he needed to control his severe pain from complications of diabetes. I granted Ledford leave to proceed on Eighth Amendment medical care claims and on Wisconsin-law medical malpractice or negligence claims. Dkt. 3.

      Defendants move for summary judgment. Dkt. 54. Ledford did not respond with a brief or supporting materials opposing defendants' motion for summary judgment. Therefore, I will consider most of defendants' proposed findings of fact as undisputed. *See* Prel. Pretrial Conf. Packet, attachment to Dkt. 13, at 8 ("If a party fails to respond to a fact proposed by the opposing party, the court will accept the opposing party's proposed fact as undisputed."). But because Ledford's complaint is a verified complaint stating under penalty of perjury that his allegations are true, Dkt. 1, I will consider that document as Ledford's declaration. *See Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996) (verified complaint can be admissible evidence at summary judgment if it otherwise satisfies the requirements for a declaration).

After considering the parties' materials, I will grant defendants' motion for summary judgment as it pertains to Ledford's federal-law Eighth Amendment claims because Ledford fails to show that defendants consciously disregarded his medical needs. I will relinquish the court's supplemental jurisdiction over his state-law claims.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

During the events of this case, plaintiff William Ledford was imprisoned at Wisconsin Secure Program Facility (WSPF). Defendants Justin Ribault, Jaime Adams, and Sheryl Kinyon worked at WSPF: Ribault as a medical doctor, Adams as the health services manager, and Kinyon as the Health Services Unit assistant manager. Defendant Daniel La Voie, M.D., is the medical director for the DOC's Bureau of Health Services. Defendant Gina Buono, M.D., is an associate medical director.

Ledford has diabetes and complications from it that include neuropathy in his legs and severe edema (swelling caused by fluid accumulation) that causes blisters and sores; parts of both of his feet have been amputated. Ledford was transferred to WSPF in July of 2020. His treating physician was non-defendant Michael Gross, who treated Ledford until January 2021.

At WSPF, medical staff, including defendants Adams and Kinyon, repeatedly encouraged him to keep his legs elevated to treat his swelling. Ledford responded that he needed to be seated to fill out legal paperwork that was important to him, and that he had to live his life, and did not want to keep his legs elevated. In September 2020, Dr. Gross prescribed Ledford Vicodin, a pain medication combining hydrocodone (an opioid pain reliever) and

acetaminophen. This was a short-term prescription that was not renewed. Gross also prescribed Ledford Cymbalta and Lyrica to treat his pain.

Defendant Ribault first saw Ledford In January 2021. Ledford reported left arm and leg tingling and numbness. Ribault requested an electromyography and nerve conduction study. In February 2021, after Ledford's legs had become red and swollen, Ribault ordered anti-swelling medication, an echocardiogram, and physical therapy; Ribault believed that increased ambulation would reduce Ledford's swelling.

Later that month, Ledford's symptoms worsened and he was seen at the hospital. Ribault met with Ledford and noted that antibiotics had helped Ledford's redness (it's unclear who ordered those antibiotics). He ordered lidocaine jelly to address Ledford's concerns of pain at a leg wound site. Ribault also noted that Ledford's swelling was caused by keeping his legs down, and that Ledford had refused treatment for his legs at various times before the recent incident. A week later Ribault increased antibiotic dosage and reminded Ledford that his swelling was caused by the lack of activity and failure to keep his legs elevated.

In early March 2021, Ledford refused an appointment with Ribault and refused his antibiotics, dressing changes, and other care. Defendant Kinyon asked defendant La Voie (who at the time worked as a physician at another institution) to meet with Ledford. La Voie reviewed the use of narcotics with Ledford and stated that narcotics were rarely used on a chronic basis outside of cancer pain. La Voie discussed the need for compression wraps or "Unna boots" to treat his symptoms like swelling. I take defendants to be saying that wrapping Ledford's legs this way could be painful. Ledford agreed that he would be willing to have his legs wrapped twice a week if medical staff could better control his pain. La Voie ordered Ledford Vicodin on a 30-day trial basis to address the pain caused by wrapping his legs. La Voie also

3

confirmed with the physical therapist that a standard walker was appropriate for Ledford to ambulate.

Over the next several months, various doctors, including defendant Ribault re-approved for Ledford medications containing hydrocodone (either Vicodin or Norco). Ledford states that the leg-wrapping treatment worked well to reduce his swelling and other symptoms. But in late November 2021, Ledford was sent to the emergency room to treat a right-leg wound and swelling. Later that month, Ledford met with Ribault, Adams, and Kinyon after he developed irritation in his lower right leg. Adams and Ribault encouraged Ledford to use his walker and ambulate as much as possible to promote healthy legs. Ribault ordered Ledford antibiotics and discussed Ledford's need to keep his legs elevated. Ribault explained to Ledford that narcotics were not indicated for his swelling pain management when he had alternative available options such as leg elevation and activity.

Ribault consulted with La Voie about tapering Ledford off his hydrocodone because Ribault thought that it had not resolved Ledford's swelling and associated wounds and because of the risks of long-term pain treatment with opioids. La Voie reviewed Ledford's medical chart and agreed with Ribault's assessment that there was no longer a need to continue Ledford on hydrocodone, particularly because he was continuing to receive other medications for pain management such as Lyrica and over-the-counter pain medications. Ribault also shared with defendant Buono his concerns about Ledford's continued use of narcotics.

On December 14, 2021, Ribault told Ledford that the opioid he had previously prescribed him would be tapered off because his swelling wasn't improving enough and it wasn't helping Ledford to tolerate ambulating or elevating his legs, which he believed was the way that

4

Ledford could control the swelling. Ribault also noted from Ledford's canteen purchases that his eating habits were contributing to his problem.

Ledford began to refuse treatment or check his blood sugar; he became visibly upset when meeting with other providers. Adams and Kinyon sought clarification from Ribault about his reasons for discontinuing the hydrocodone and they sought to consult with defendant La Voie about Ledford's treatment and his refusal of care. In the meantime, Ledford's symptoms worsened.

On January 6, 2022, defendant Ribault, La Voie, Adams, and Kinyon met to discuss Ledford's plan of care. After that meeting, Ribault reinstated opioid pain medication for Ledford. By that time, Ledford's symptoms had worsened to the point that he was sent to the nearby emergency room and then UW Hospital in Madison to receive treatment for several days.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

Ledford contends that defendants violated the Eighth Amendment and Wisconsin medical malpractice and negligence law by discontinuing his opioid pain medication. I begin with his Eighth Amendment claims.

A. **Eighth Amendment claims**

Ledford brings Eighth Amendment claims against defendants Ribault, Adams, and Kinyon. The Eighth Amendment prohibits prison officials from acting with conscious disregard toward prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one

for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). Defendants do not dispute that Ledford's diabetes and complications from it are serious medical needs.

A defendant "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

1. **Defendant Ribault**

Ledford contends that defendant Dr. Ribault consciously disregarded his pain by weaning him off hydrocodone in December 2021. Defendants state that defendant La Voie initially prescribed that medication to address the pain caused by wrapping Ledford's legs to treat his swelling and wounds. Ribault states that he thought that this course of treatment wasn't successfully treating his edema or leg wounds, and that opioid pain medication wasn't otherwise meant to directly treat pain from leg swelling when Ledford had other alternatives such as elevating his legs and ambulating. He states that he didn't want to use pain medication that masked Ledford's underlying medical problems that could be directly treated in other ways in the hope of avoiding a premature amputation, and that it wasn't appropriate to treat neuropathy with opioids long term.

Generally when considering medical care claims, I must consider the totality of care that Ledford received, not just pick apart individual decisions. *Petties v. Carter*, 836 F.3d 722, 728

6

(7th Cir. 2016). And prisoners are not entitled to the treatment of their choice. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019). Discontinuation of a particular pain medication is a common part of the ordinary course of patients' care as providers attempt different treatments. Here, aside from the wrapping and opioid treatment, Ribault and other staff had prescribed Ledford many additional types of treatments for his diabetes complications, including outside diagnostic tests, a walker, shoe inserts, physical therapy, Lyrica and Cymbalta for his neuropathy, over-the-counter pain medication, anti-swelling medication, antibiotics, and lidocaine jelly. Ribault also stressed that Ledford should regularly elevate his feet and be active on his legs to combat swelling; he believed that at least part of Ledford's pain was caused by not following through on that instruction and by eating foods exacerbating his diabetes. And Ribault reinstated Ledford's hydrocodone in early January 2022, only about three weeks after discontinuing it. Nothing about the totality of Ribault's care suggests that he consciously disregarded Ledford's condition or his pain; rather, it suggests that he exercised his professional medical judgment. *See, e.g.*, *Norwood v. Gosh*, 723 F. App'x 357, 365 (7th Cir. 2018) ("treating pain allows considerable room for professional judgment").

Nonetheless, Ledford contends that Ribault's decision to discontinue his hydrocodone was not motivated by his professional judgment, because the wrapping and opioid treatment was going well. Rather, Ledford contends that Ribault discontinued his hydrocodone out of retaliatory animus for him filing a grievance against Ribault on November 28, 2021, about failing to treat an abdominal malady that he suffered.[1] Ledford adds that Ribault lied to defendant La Voie about the efficacy of the wrapping and opioid treatment to avoid any

---

[1] I dismissed Ledford's First Amendment retaliation claim against Ribault for Ledford's failure to exhaust his administrative remedies for that claim. Dkt. 45.

7

pushback from La Voie about the proposed discontinuation. A plaintiff can establish a defendant's conscious disregard by showing that the defendant's treatment decision "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." *Johnson v. Rimmer*, 936 F.3d 695, 707 (7th Cir. 2019).

Suspicious timing alone is rarely sufficient to establish a genuine issue of material fact for trial over a party's retaliatory motive. *See, e.g., Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). And prisoners routinely file grievances about their conditions of confinement and medical treatment, so the mere fact that Ribault made a medical decision that Ledford disagrees with two weeks after Ledford filed a grievance against Ribault isn't enough for a reasonable jury to conclude that Ribault made that decision to hurt Ledford.

As for Ledford's contention that Ribault lied to La Voie about the efficacy of the wrapping and opioid treatment, Ledford doesn't explain Ribault's need to lie—there's no indication that Ribault needed La Voie's approval for prescribing or discontinuing a medication—nor does he provide any evidence suggesting that Ribault's opinion about the efficacy of treatment was anything other than his honest opinion. In his verified complaint, Ledford states that the wrapping treatment was "an unqualified success," Dkt. 1, at 6, but that characterization isn't borne out by his medical records, which show that he continued to experience at least some swelling and needed a trip to the emergency room in late November 2021 to treat a blister, redness, and swelling.

Even so, Ledford argues that his treatment was working, so Ribault could not have used medical judgment in ending it. The evidence suggests that Ribault's opinion about the efficacy of the wrapping and opioid treatment was not shared by all other medical staff. After Ribault

8

discontinued the hydrocodone, Ledford became angry and began to refuse further treatment. Defendant Adams asked Ribault for clarification about his reasons for discontinuing a pain medication that she thought had been prescribed for Ledford's chronic use. Ribault explained that the opioid was meant for short-term use, that Ledford's swelling had not improved enough, and that the best way for Ledford to treat swelling was to elevate his legs.

About a week later, Ledford developed worse pain and swelling and was sent to the emergency room to evaluate "for any imminent threat to the limbs or imminent risk of systemic illness." Dkt. 62-1, at 554. Upon return, a non-defendant on-call doctor did not prescribe a narcotic, stating "there has been no change in the patient's condition of which I am aware that would necessitate the use of hydrocodone." *Id.* Around that same time, Adams and Kinyon reached out to La Voie, asking him "do [you] as the Medical Director feel that the patient is provided adequate medical care under Dr. Ribaults orders?" *Id.* at 540.

This led to a January 6, 2022 meeting between Ribault, La Voie, Adams, and Kinyon. By that time, Ledford's legs had developed "red, crusty areas . . . where weeping had happened." *Id.* at 461. Accordioning to La Voie, "[i]t became evident that there was a difference of opinion as to how effective the use of opioids had been." Dkt. 60, ¶ 21. La Voie thought that "Ledford had tolerated the wrapping of his lower extremities and overall had improvement in swelling, reduced frequency of skin breakdown and infection" but that "this condition is typically one of waxing and waning symptoms." *Id.* At this meeting, Ribault suggested reinstating the hydrocodone at least until Ledford's symptoms improved. Ribault reinstated the hydrocodone that day, along with noting follow ups with vascular surgery and pain management providers.

It's unclear whether La Voie meant that there was a difference of opinion between Ribault and Ledford or Ribault and La Voie, but a reasonable jury could infer that La Voie

9

disagreed with Ribault's discontinuation of hydrocodone. And Adams's and Kinyon's correspondence with La Voie suggests that they too disagreed with the discontinuation. Nonetheless, mere disagreement among medical providers' judgments is not enough to establish conscious disregard. *Berry v. Peterman*, 604 F.3d 435, 442 (7th Cir. 2010). The deterioration of Ledford's condition, other medical staff's actions and testimony, and the quick reinstatement of hydrocodone suggest that Ribault's discontinuation of hydrocodone was perhaps ill conceived. But that isn't enough for a reasonable jury to conclude that Ribault consciously disregarded Ledford's medical needs. There is no evidence that Ribault's decision was so far outside the scope of accepted medical practice that one could infer that the decision was not truly based in professional medical judgment. I will grant defendants' motion for summary judgment regarding Ledford's Eighth Amendment claim against Ribault.

2. **Defendants Adams and Kinyon**

Ledford also brings Eighth Amendment claims against defendants Adams and Kinyon for failing to do something to stop Ribault's discontinuation of hydrocodone that they knew was harmful to Ledford. *See, e.g.*, *Berry*, 604 F.3d at 443 ("Although a medical care system requires nurses to defer to treating physicians' instructions and orders in most situations, that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient."). But the evidence shows that Adams and Kinyon did intervene once they thought the lack of medication was harming Ledford: they asked Ribault for a clarification about the reasons for his order and they then reached out to La Voie about

their concerns, which led to the meeting that reinstated the prescription. I will grant defendants' motion for summary judgment on these claims.[2]

## B. State-law claims

That leaves Ledford's Wisconsin-law claims for medical malpractice or negligence against defendants Ribault, Adams, Kinyon, La Voie, and Buono. The court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367(a), which permits a federal district court to hear a state-law claim if it is related to a federal claim in the same action. Ledford doesn't allege any other basis for federal jurisdiction over the state-law claims. Absent unusual circumstances, district courts will relinquish supplemental jurisdiction over state-law claims if all federal claims have been resolved before trial. *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 352 (7th Cir. 2019). Neither party identifies any unusual circumstances that would justify retaining jurisdiction over Ledford's state-law claims. I will relinquish jurisdiction over those claims.

Ledford may refile those claims in state court, subject to the applicable Wisconsin statute of limitations. Those limitations periods have been tolled while this case has been pending, but they will begin again 30 days from now. *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under [the court's supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

---

[2] Defendants also contend that they are entitled to qualified immunity on Ledford's due process claims. Because I am dismissing those claims on the merits, I need not consider defendants' qualified immunity arguments.

11

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 54, is GRANTED with respect to plaintiff's federal-law claims.

2. Plaintiff's state-law claims are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

3. The clerk of court is directed to enter judgment accordingly and close this case.

Entered March 14, 2025.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge